# United States Court of Appeals for the Federal Circuit

05-1444

INTERNATIONAL CUSTOM PRODUCTS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Simeon M. Kriesberg, Mayer, Brown, Rowe & Maw LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Andrew A. Nicely and Priti Seksaria Agrawal.

Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director, of Washington, DC; and Edward F Kenny, Trial Attorney of New York, New York. Of counsel on the brief was Yelena Slepak, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

05-1444

INTERNATIONAL CUSTOM PRODUCTS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

———————————————

DECIDED:  October 17, 2006

———————————————

Before NEWMAN, MAYER, and BRYSON, Circuit Judges.

MAYER, Circuit Judge.

The United States appeals from the final decision of the United States Court of International Trade, which asserted jurisdiction under 28 U.S.C. § 1581(i)(4) and held that the United States Bureau of Customs and Border Protection ("Customs")[*] violated 19 U.S.C. § 1625(c)(1).  Int'l Custom Prods. v. United States, 374 F. Supp. 2d 1311 (Ct. Int'l Trade 2005).  Because we conclude that the court lacked jurisdiction, we reverse its

---

[*]  Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection.  Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135, 2308-09 (2002).

jurisdictional holding, vacate its judgment on the merits, and remand for dismissal of the complaint.

## Background

International Custom Products, Inc. ("ICP") is an importer and distributor of products sold to processed food manufacturers. In April 1999, it began importing "white sauce," which is a milkfat-based product used in sauces, salad dressings, and other food products. Prior to commencing white sauce importation, ICP sought and received a ruling from Customs on the classification of the sauce, which issued on January 20, 1999, as New York letter ruling D86228. This classified the product under subheading 2103.90.9060 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which has since been renumbered as subheading 2103.90.9091. In reliance on this letter ruling, ICP entered into a three-year purchase agreement with its foreign supplier and a three-year supply contract with its largest customer. ICP also relied on the advance ruling by making preparations to commence a manufacturing business, including purchasing a plant site and conducting product research and development. However, the manufacturing plant has been operated by ICP's sister corporation since October 1, 2004.

In March 2004, Customs notified ICP that it was initiating a tariff rate investigation. Based on its investigation, and without providing notice and comment, Customs issued a Notice of Action dated April 18, 2005, stating that 86 unliquidated entries of white sauce would be classified under subheading 0405.20.3000, which substantially increased the tariff. On May 6, 2005, 60 of the 86 subject entries were liquidated. ICP filed suit in the Court of International Trade asserting that Customs'

actions violated 19 U.S.C. § 1925(c)(1) or (2) by effectively revoking the advance letter ruling without following proper procedures.

The trial court held that it had jurisdiction under 28 U.S.C. § 1581(i)(4) and declared the notice of action null and void for failure to comply with 19 U.S.C. § 1925(c)(1). It also ordered Customs to reliquidate the entries, and ordered that the advance ruling must remain in full force and effect until properly modified or revoked by Customs. The United States appeals.

## Discussion

"As an appellate body, we have inherent jurisdiction to determine whether a lower tribunal had jurisdiction." Interspiro USA v. Figgie Int'l, 18 F.3d 927, 930 (Fed. Cir. 1994) (citing C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 877 (Fed. Cir. 1983)). Because jurisdiction is an issue of law, our review is de novo. Xerox Corp. v. United States, 289 F.3d 792, 793-94 (Fed. Cir. 2002).

"It is a 'well-established principle that federal courts . . . are courts of limited jurisdiction marked out by Congress.'" Norcal/Cosetti Foods, Inc. v. United States, 963 F.2d 356, 358 (Fed. Cir. 1992) (quoting Aldinger v. Howard, 427 U.S. 1, 15 (1976)). The Court of International Trade's jurisdiction is set out at 28 U.S.C. § 1581. In subsection 1581(a), Congress set an express scheme for administrative and judicial review of Customs' actions. The system provides for a protest before Customs, and review of protest denials in the Court of International Trade. 19 U.S.C. §§ 1514, 1515; 28 U.S.C. 1581(a). Here, ICP did not file a protest and avail itself of jurisdiction under subsection (a).

ICP contends, and the trial court agreed, that jurisdiction nevertheless existed under section 1581(i)(4). Although we have described subsection 1581(i)(4) as a "broad residual jurisdictional provision," Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987), and even a "catch-all provision," Norcal/Cosetti Foods, Inc., 963 F.2d at 359 (Fed. Cir. 1992), "the unambiguous precedents of this court make clear that its scope is strictly limited," id., and that the protest procedure cannot be easily circumvented, see, e.g., Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546, 1549 (Fed. Cir. 1983) ("[W]here a litigant has access to [the Court of International Trade] under traditional means, such as 28 U.S.C. 1581(a), it must avail itself of this avenue of approach by complying with all the relevant prerequisites thereto. It cannot circumvent the prerequisites of 1581(a) by invoking jurisdiction under 1581(i) . . . ." (quoting Am. Air Parcel Forwarding Co. v. United States, 557 F. Supp. 605, 607 (Ct. Int'l Trade 1983) with approval)); United States v. Uniroyal, Inc., 687 F.2d 467 (CCPA 1982); accord JCM, Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000); Nat'l Corn Growers Ass'n v. Baker, 840 F.2d 1547, 1558 (Fed. Cir. 1988).

Indeed, we have repeatedly held that subsection (i)(4) "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Norcal/Crosetti Foods, 963 F.2d at 359 (quoting Miller & Co., 824 F.2d at 963; citing Nat'l Corn Growers Ass'n, 840 F.2d at 1557). Here, ICP does not contend that subsection (a) was unavailable, but that it was manifestly inadequate. We conclude that the remedy provided by subsection 1581(a) is not manifestly inadequate, and that

05-1444                                4

therefore the Court of International Trade lacked jurisdiction under subsection 1581(i)(4).

First, ICP alleges many forms of financial hardship that would result from proceeding under subsection 1581(a), including an imminent threat of bankruptcy. In American Air Parcel, the importer made similar allegations. 718 F.2d at 1549. We rejected the argument there, and it is equally insufficient here, to confer residual jurisdiction. Moreover, our cases make clear that "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." Miller, 824 F.2d at 964 (citing Am. Air Parcel, 718 F.2d at 1550-51); see also Nat'l Corn Growers Ass'n, 840 F.2d at 1557. Equally unavailing is ICP's contention that the lack of prospective relief under subsection (a) renders it manifestly inadequate. See National Corn Growers Assoc., 840 F.2d at 1557. To find the relief under subsection (a) inadequate on this ground, we would have to assume that Customs would disregard a court ruling on the current imports when classifying identical imports in the future. We decline to indulge such an assumption.

ICP further contends that the delays inherent in proceeding under subsection 1581(a) would render any available relief manifestly inadequate due to its financial distress. However, delays inherent in the statutory process do not render it manifestly inadequate. See Am. Air Parcel, 718 F.2d at 1551 ("[T]he Customs Service regulations have not built unconscionable delay into the protest procedure."). Moreover,

Congress has provided for an accelerated protest disposition process, 19 U.S.C. § 1515(b), and this accelerated process was available to ICP for some of its entries.[**]

Finally, ICP contends that a protest would be futile. In <u>Pac Fung Feather Co. v. United States</u>, 111 F.3d 114, 116 (Fed. Cir. 1997), we held that residual jurisdiction was available because the "preordained ruling" available to the importers was a mere formality in light of Customs' regulations, which "unmistakably" indicated how it would determine the issue in dispute. Here, there are no such regulations in place that would make the protest process futile, and despite the revocation of the advance letter having involved higher level Customs officials, Congress' express scheme cannot be bypassed. <u>See</u> <u>JCM, Ltd.</u>, 210 F.3d at 1359 ("To allow a party to elect to proceed under section 1581(i), without having first availed himself of the remedy provided by section 1581(c), would undermine the integrity of the clear path Congress intended a claimant to follow."). The Court of International Trade itself has previously warned parties against making such assumptions of futility: "Plaintiff cannot take it upon itself to determine whether it would be futile to protest or not. In order to protect itself, a protest should have been filed and an accelerated review should have been requested." <u>Inner Secrets/Secretly Yours v. United States</u>, 869 F. Supp. 959, 966 (Ct. Int'l Trade 1994). We reiterate that warning.

---

[**] The accelerated protest review process statute, 19 U.S.C. § 1515(b), was amended during the period in which the subject entries were made. Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, §§ 2104, 2108, 118 Stat. 2434, 2598 (amending 19 U.S.C. § 1515(b) as effective for "merchandise entered, or withdrawn from warehouse for consumption, on or after the 15th day after Dec. 3, 2004"). Although some of ICP's entries are governed by the pre-amended statute, which required an importer to wait 90 days before requesting accelerated disposition, at least some of the entries were subject to the revised, more accelerated, review process.

Because the Court of International Trade lacked jurisdiction over the case, we have no jurisdiction to reach ICP's argument concerning Customs' purported statutory violations.  Glasstech, Inc. v. Ab Kyro Oy, 769 F.2d 1574, 1577 (Fed. Cir. 1985) ("[A]n appellate court has no jurisdiction to decide the merits of the case if the court from which the appeal was taken was without jurisdiction.").  Therefore, we vacate the trial court's decision on the merits.

### Conclusion

Accordingly, the judgment of the United States Court of International Trade is reversed with respect to jurisdiction, vacated on the merits, and the case is remanded with instructions to dismiss the complaint for lack of jurisdiction.

### COSTS

Appellant shall have its costs.


### REVERSED-IN-PART; VACATED-IN-PART; AND REMANDED