# United States Court of Appeals for the Federal Circuit

2008-1071

HARTFORD FIRE INSURANCE COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Frederic D. Van Arnam, Jr.,. Barnes, Richardson & Colburn, of New York, New York, argued for plaintiff-appellant. With him on the brief was Eric W. Lander.

Michael J. Dierberg, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director; and Franklin E. White, Jr., Assistant Director. Of counsel was Beth C. Brotman, Office of the Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Donald C. Pogue

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2008-1071

HARTFORD FIRE INSURANCE COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 07-00101, Judge Donald C. Pogue.

_____

DECIDED:   October 8, 2008
_____

Before MAYER, LOURIE, and PROST, <u>Circuit Judges.</u>

MAYER, <u>Circuit Judge</u>.

Hartford Fire Insurance Company appeals the judgment of the United States Court of International Trade, finding no subject matter jurisdiction over its claim to find its surety bonds unenforceable.  <u>Hartford Fire Ins. Co. v. United States</u>, 507 F. Supp. 2d 1331 (Ct. Int'l Trade 2007).  Because we agree that the true nature of the action is a failure to file an administrative protest to a demand for payment on a surety bond, we <u>affirm</u>.

BACKGROUND

In February 2004, importer Brother Packaging imported three entries of polyethylene t-shirt bags into the United States pursuant to surety bonds covering applicable duties. These bonds were executed in April 2002 and December 2004 naming appellant Hartford Fire Insurance Company ("Hartford") as the surety. The merchandise was subject to antidumping duties. Upon entry, the United States Customs Service ("Customs") classified the imported merchandise under Harmonized Tariff Schedule of the United States subheading 3923.29, requiring a duty of 3% ad valorem under a countervailing duty order. However, upon liquidation Customs reclassified the imported goods under subheading 3923.21, dutiable at 84.78% ad valorem under an antidumping duty order. In February 2006, Customs issued a formal demand to Hartford to pay the duties.

Hartford alleged that its bond was unenforceable because the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (repealed 2006), altered the distribution of collected duties, and because it was not obligated to pay a subsidy to the U.S. domestic industry. Before the Byrd Amendment, collected duties were placed into the general treasury. Pursuant to the Act however, upon liquidation of the dutiable goods, collected duties were placed into special accounts within the general treasury for disbursement on each antidumping duty or countervailing duty order. 19 U.S.C. § 1675c(e); 19 C.F.R. § 159.64 (2008). These funds would be distributed out of the accounts to affected domestic producers pro rata as a "continued dumping and subsidy offset." 19 U.S.C. § 1675c(a). Hartford claimed that this change in the law materially altered its bond agreements, which it claims

2008-1071                              2

required funds paid on the bonds to be distributed to the United States, and not to any individual or company. Hartford therefore argued that jurisdiction resided in the United States Court of International Trade pursuant to 28 U.S.C. § 1581(i) (2006) to determine the common law surety issue of the enforceability of the bonds.[1]

Hartford filed suit in the Court of International Trade in March 2007 asking the court to declare the bonds unenforceable. The court held that because the true nature of the action was a challenge to a customs charge protestable under 28 U.S.C. § 1581(a),[2] jurisdiction pursuant to 28 U.S.C. § 1581(i) was not available unless Hartford showed that section 1581(a) was "manifestly inadequate." The court dismissed, finding that section 1581(a) was adequate, and that Hartford should have timely pursued this administrative remedy. Hartford appealed to this court arguing that the Court of International Trade erred as a matter of law in finding jurisdiction under section 1581(a) and failing to find that section 1581(a) would have been manifestly

---

[1]    28 U.S.C. § 1581(i) provides in relevant part:
In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a) - (h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
    (1) revenue from imports or tonnage;
    (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
    (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
    (4) administration and enforcement with respect to the matters referred to in paragraphs (1) - (3) of this subsection and subsections (a) - (h) of this section.

[2]    28 U.S.C. § 1581(a) provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."

inadequate as a vehicle for relief, rendering section 1581(i) available. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2006).

## DISCUSSION

"As an appellate body, we have inherent jurisdiction to determine whether a lower tribunal had jurisdiction." Interspiro USA v. Figgie Int'l, Inc., 18 F.3d 927, 930 (Fed. Cir. 1994) (citing C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 877 (Fed. Cir. 1983)). Because jurisdiction is an issue of law, our review is de novo. Xerox Corp. v. United States, 289 F.3d 792, 793-94 (Fed. Cir. 2002).

The Court of International Trade has jurisdiction limited to specific cases enumerated in 28 U.S.C. § 1581. In subsection 1581(a), Congress set out an express scheme for administrative and judicial review of Customs' actions. Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324, 1326 (Fed. Cir. 2006). The system grants the court exclusive jurisdiction to hear cases contesting a protest denial in an administrative hearing before Customs pursuant to section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515. Id. at 1326-27. Section 1581(i) grants the court exclusive, residual jurisdiction to hear civil actions against the United States concerning importation revenues, tariffs and duties, embargoes, and administration and enforcement of matters involving section 515 of the Tariff Act and other matters not relevant to this case. While we have previously labeled subsection 1581(i) as a "catch all provision", see, e.g., Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992), we have also consistently held that to prevent circumvention of the administrative processes crafted by Congress, jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of section 1581 is or could have been

available, unless the other subsection is shown to be manifestly inadequate. Int'l Custom Prods., 467 F.3d at 1327. Therefore, "where a litigant has access to [the Court of International Trade] under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach by complying with all the relevant prerequisites thereto. It cannot circumvent the prerequisites of 1581(a) by invoking jurisdiction under 1581(i)" unless such traditional means are manifestly inadequate. Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546, 1549 (Fed. Cir. 1983) (quoting Am. Air Parcel Forwarding Co. v. United States, 557 F. Supp. 605, 607 (Ct. Int'l Trade 1983)).

Jurisdiction pursuant to subsection 1581(a) is available to litigants challenging the denial of a protest under 19 U.S.C. § 1515 (2006). Protests against Customs decisions can be filed against "any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same" concerning seven enumerated matters including "(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." 19 U.S.C. § 1514(a) (2006) (emphasis added). Absent such a protest, the Customs decision is final. Id. A protestant must file a protest of a decision, order, or finding described in subsection 1514(a) within 180 days after but not before the date of liquidation or reliquidation. Id. § 1514(c)(3).

The trial court found that Customs' 2006 demand for payment was a charge within the meaning of 19 U.S.C. § 1514(a) to which Hartford then had 180 days to protest before the action became final. Hartford does not challenge that the demand for

payment was a charge. Therefore, if the claims had been timely, they could have been asserted in a protest before Customs. The protest would have offered the opportunity to present any defenses to the charge, and if the protest resulted in a denial, it would have garnered jurisdiction in the Court of International Trade pursuant to subsection 1581(a). Because Hartford could have secured jurisdiction pursuant to subsection 1581(a), the court therefore does not have jurisdiction pursuant to subsection 1581(i) to entertain a challenge to the charge without a showing that subsection 1581(a) was manifestly inadequate.

Hartford, however, argues that it is not challenging the charge in the 2006 demand for payment, but rather is asking the court to find the bonds unenforceable. Couching its claim as a contract dispute between principal, surety, and the government, it claims therefore that jurisdiction under subsection 1581(a) is not available because adjudicating the enforceability of surety bonds is outside the scope of Customs decisions protestable under to 19 U.S.C. § 1514(a).[3] Instead it alleges that its claims sound in common law state suretyship and contract law, outside of Customs' authority

---

[3] Hartford refers to the entire list in 19 U.S.C. § 1514(a) in alleging that their claim is included in none of the enumerated categories:

(1) the appraised value of merchandise;
(2) the classification and rate and amount of duties chargeable;
(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 or section 1504 of this title;
(6) the refusal to pay a claim for drawback; or
(7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title.

to determine. Accordingly, it argues, this contract dispute lies solely within the broad grant of residual jurisdiction under subsection 1581(i). This argument fails for a number of reasons.

While this court has described subsection 1581(i) as a "broad residual jurisdictional provision," we have in the same breath said that "the unambiguous precedents of this court make clear that its scope is strictly limited, and that the protest procedure cannot be easily circumvented." Int'l Custom Prods., 467 F.3d at 1327 (internal quotations omitted). To prevent usurpation of the protest scheme Congress has crafted, it is of utmost importance that mere recitation of a basis for jurisdiction not be controlling. Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006). Just as we must look to the true nature of the action in a district court in determining jurisdiction on appeal, the trial court was correct to look to the true nature of the action in determining jurisdiction at the outset. See id. The true nature of the action is that Hartford seeks to avoid the payment of the demand. The unenforceability of the bonds it alleges in its complaint is merely a theory of defense upon which Customs may grant the relief of cancelling the charge. In other words, despite alleging otherwise, Hartford is challenging a charge. As described supra, the proper mechanism to challenge a charge is via a protest before Customs pursuant to 19 U.S.C. § 1514(a)(3). Re-casting the case as a request to declare the bonds unenforceable is merely "artful pleading." Cf. Norsk Hydro, 472 F.3d at 1355. Hartford could have brought its claim through the protest mechanism, the denial of which would have triggered review pursuant to subsection 1581(a). Its failure to do so renders subsection 1581(i) unavailable.

Hartford's argument that determining the enforceability of the bonds is outside the scope of Customs' powers is also without merit. Again couching its claim as a contract issue concerning private rights, it relies on Bank One Chic., N.A. v. Midwest Bank & Trust Co., 516 U.S. 264 (1995), to support its premise that agencies generally do not have the authority to adjudicate private claims. This is a false premise, however, because here the United States is a party to the action as the obligee on the bond, just as Hartford named the United States as the defendant. The situations described in Bank One Chic. concerned a bank attempting to sue another bank for dishonoring a check before the Federal Reserve Board, a creditor attempting to sue an insolvent savings and loan association before the Federal Savings and Loan Insurance Corp., and frequent flyers attempting to sue an airline before the Department of Transportation. Bank One Chic., 516 U.S. at 274-75; see also Coit Independence Joint Venture v. FSLIC, 489 U.S. 561 (1989); Am. Airlines, Inc. v. Wolens, 513 U.S. 219 (1995). Those cases are not analogous.

To the contrary, Customs does have broad authority over the administration and forms of bonds, including determining their validity and enforceability and a surety's liability pursuant to the bonds. Am. Pillowcase & Lace Co. v. United States, 20 Cust. Ct. 53, 61 (1948); see also 19 U.S.C. §§ 66, 1623 (2006). It has congressional authorization to "prescribe the conditions and form" of bonds. 19 U.S.C. § 1623(b). Customs has the authority that Hartford seeks to cancel any bond or a charge against a bond "in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as [Customs] may deem sufficient." Id. § 1623(c) (emphasis added); see also 19 C.F.R. § 113.51 (2008).

This broad language clearly shows the ability of Customs to cancel a bond or a charge completely if a breach that should render the bond unenforceable occurs.

In St. Paul Fire & Marine Insurance Co. v. United States, 959 F.2d 960 (Fed. Cir. 1992), a surety sought to invoke jurisdiction in the Court of International Trade to nullify its bond obligations.  It argued that the bonds should not be enforceable because the government had breached its duties by failing to disclose its investigations into the principal's fraudulent conduct, causing it to insure a risk it would not otherwise have insured.  Id. at 961.  The trial court held that the demand on the bond was protestable as a charge within the meaning of 19 U.S.C. § 1514(a)(3), and we agreed stating, "there is . . . no question that a surety may protest the government's demand for payment on its bond" provided it files such protest within the allowable time, now 180 days.  Id. at 963;[4] see also 19 U.S.C. § 1514(c).

Hartford alleges that the protest remedy would have been manifestly inadequate under subsection 1581(a) because interpretation of surety and contract law are outside the authority and competency of Customs.  To be manifestly inadequate, the protest must be an exercise in futility, or "incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain."  Oxford English Dictionary (2d ed. 1989); cf. Int'l Custom Prods., 467 F.3d at 1328 (discussing the futility of a protest).  Hartford claims that it is not challenging the statutory or regulatory terms of the bond, but rather that the contract between the importer, the government, and

---

[4]     We did conclude in that case that jurisdiction was proper under subsection 1581(i) however, because the surety's claim did not accrue, that is, the investigation into the principal's fraudulent activity did not surface, until after the protest allowance period had expired.  Therefore, the surety was not circumventing the protest procedure required of subsection 1581(a).  St. Paul Fire & Marine Ins. Co., 959 F.2d at 964.

itself has been materially altered, thus releasing it from its obligations under common law suretyship and contract principles. It then argues that pursuing a remedy through a protest would have been futile. But Customs has the authority to cancel a bond or a charge against a bond in the event of the breach of any condition of the bond, the ultimate remedy Hartford seeks. 19 U.S.C. § 1623(c).

Hartford never filed a protest to the charge. As we said in <u>United States v. Uniroyal, Inc.</u>, 687 F.2d 467, 475 (C.C.P.A. 1982), a belief that it had no remedy under subsection 1581(a) would not make that remedy inadequate. Hartford simply made no attempt to use it. We are also not persuaded by Hartford's unsupported suspicion that because Customs is financially interested in the result of the protest, it may be biased towards denying the remedy it seeks. Its reliance on <u>McCarthy v. Madigan</u>, 503 U.S. 140 (1992), is misplaced because there, the Court stated that such a protest may be inadequate where "the administrative body is <u>shown</u> to be biased or has otherwise predetermined the issue before it." <u>Id.</u> at 148 (emphasis added). Hartford has made no such showing. "Plaintiff cannot take it upon itself to determine whether it would be futile to protest or not. In order to protect itself, a protest should have been filed . . . ." <u>Int'l Custom Prods.</u>, 467 F.3d at 1328.

## CONCLUSION

Accordingly, the judgment of the United States Court of International Trade is affirmed.

## <u>AFFIRMED</u>