Slip Op. 13 - 148

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| BEST KEY TEXTILES CO. LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| | : | Court No. 13-00367 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |

## OPINION

[Dismissing for lack of subject matter jurisdiction.]

Decided:  December 13, 2013

*John M. Peterson*, *Maria E. Celis*, *Richard F. O'Neill*, *George W. Thompson*, and *Russell A. Semmel*, Neville Peterson LLP of New York, NY, for the plaintiff.

*Marcella Powell* and *Beverly A. Farrell*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the defendant. With them on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Amy M. Rubin*, Acting Assistant Director, International Trade Field Office. Of counsel on the brief were *Claudia Burke* and *Tara K. Hogan*, Department of Justice, and *Paula S. Smith*, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection.

Musgrave, Senior Judge:  The plaintiff, Best Key Textile, Inc., seeks pre-importation declaratory judgment that U.S. Customs and Border Protection's ("Customs") Headquarters Ruling Letter HQ H202560 dated Sep. 17, 2013 and published at 47 Cust. Bull. & Dec. 41 (Oct. 2, 2013) at 20 ("Revocation Ruling"), is arbitrary and capricious, an abuse of discretion, or not in accordance with law.  *Cf.* Slip Op. 13-145 (Dec. 4, 2013).  The Revocation Ruling revoked New York Customs

Ruling N187601 (Oct. 25, 2011), which had ruled the plaintiff's proprietary "BKMY"[1] yarn statutorily classifiable under heading 5605, Harmonized Tariff Schedule of the United States ("HTSUS"), as "metalized" yarn dutiable at 13.2% *ad valorem* (the "Yarn Ruling"). The Revocation Ruling concluded the yarn is "of polyesters" dutiable under heading 5402 at 8% *ad valorem*.[2] The plaintiff argues the Yarn Ruling provides the correct classification under heading 5605. For the following reasons, the court must conclude subject matter jurisdiction is lacking in this action.

*Discussion*

The plaintiff contends jurisdiction exists under 28 U.S.C. § 1581(h) or alternatively 28 U.S.C. § 1581(i)(4). The plaintiff explains that it sought and obtained the pre-importation Yarn Ruling in 2011 pursuant to 19 C.F.R. part 177 upon representing that it contemplated a "specifically described transaction". *See* 19 C.F.R. §177.1(a)(1).[3]

---

[1] The plaintiff avers that "BKMY" is produced by mixing aluminum, zinc or other metal in nanopowdered form together with titanium dioxide (as delusterant) into a polyester slurry prior to extrusion of the yarn through a spinneret.

[2] Specifically, the Yarn Ruling had found the yarn classifiable under subheading 5605.00.90, HTSUS, which provides for "metalized yarn whether or not gimped, being textile yarn, combined with metal in the form of thread, strip or powder or covered with metal: Other . . . 13.2%", whereas the Revocation Ruling ruled the yarn classifiable under subheading 5402.47.90, HTSUS, which provides for"Synthetic filament yarn (other than sewing thread), not put up for retail sale, including synthetic monofilament of less than 47 decitex: Other, of polyesters: Other . . . 8%".

[3] *See also* §177.1(d)(3) ("[a] 'prospective' transaction is one that is contemplated or is currently being undertaken and has not resulted in any arrival or the filing of any entry or other document, or in any other act to bring the transaction, or any part of it, under the jurisdiction of any Customs Service office"); §177.2(b) (content of a ruling request shall include, if known, "the name of the port or place at which any article involved in the transaction will arrive or be entered . . . and a description of the transaction itself"); §177.5 ("[e]ach person submitting a request for a ruling in connection with a Customs transaction shall immediately advise Customs in writing of any change in the status of that transaction, as defined in §177.1(d)(3)"). As indicated by the foregoing, Customs
(continued...)

The plaintiff also avers that in seeking to confirm the "duty rate benefits" of the Yarn Ruling, it made, or ordered made, a garment, the "Johnny Collar" shirt, comprised of BKMY, and it requested from Customs a ruling concerning the garment's classification. The plaintiff contended the garment was classifiable under subheading 6105.90.8030, which provides for "Men's or boys' shirts, knitted or crocheted: Other: Subject to man-made fiber restraints . . . 5.6%". In NY N196161 (Apr. 13, 2012), Customs initially ruled that the garment was classifiable as a polyester shirt under subheading 6110.30.3053, which provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted: of wool or fine animal hair: Of man-made fibers: Other: Other: Other: Other: Men's or boys': Other: . . . 32%". However, upon reconsideration, in HQ H226262, dated Sep. 16, 2013, Customs revoked this ruling as contrary to NY N187601, and ruled that the Johnny Collar shirt remained classifiable in subheading 6110.90.90, HTSUS, which provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted: Of other textile materials: Other . . . . 6%". 47 Cust. Bull. & Dec. 41 (Oct. 2, 2013) at 15. Be that as it may, the plaintiff does not explain how the Johnny Collar ruling or its revocation affects its "contemplated transaction" of an importation of its *yarn* into these United States, which is the essence of the 28 U.S.C. §1581(a) standing requirement referenced in 28 U.S.C. §2631(h).

---

[3] (...continued)
contemplates for purposes of a pre-importation ruling that a "contemplated" transaction is one that is not merely hypothetical. *See* 19 C.F.R. § 177.7(a) ("no ruling letter will be issued with regard to transactions or questions which are essentially hypothetical in nature or in any instance in which it appears contrary to the sound administration of the Customs and related laws to do so"). There was, however, no representation in this proceeding that the yarn has been or would actually be imported.

I

An action brought for declaratory judgment under 19 U.S.C. §1581(h) may only be commenced "by the person who would have standing to bring a civil action under section 1581(a) of this title if he imported the goods involved and filed a protest which was denied, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 2631(h). The Court of Appeals for the Federal Circuit has explained the requirements for invoking jurisdiction under section 1581(h) as follows: (1) judicial review must be sought prior to importation of goods; (2) review must be sought of a ruling, a refusal to issue a ruling, or a refusal to change such ruling; (3) the ruling must relate to "certain subject matter"; and (4) it must be shown that irreparable harm will occur unless judicial review is obtained prior to importation. *Am. Air. Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1551-52 (Fed. Cir.1983), *cert. denied*, 466 U.S. 937 (1984). The plaintiff has the burden of demonstrating that jurisdiction exists by clear and convincing evidence. 28 U.S.C. § 2639(b). *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

It is with that "certain subject matter" of condition (3), as well as the harm alleged with respect to condition (4), that this court must address, as the defendant has moved to dismiss for lack of subject matter jurisdiction. The plaintiff apparently satisfies conditions (1) and (2), but with regard to (3), the plaintiff conflates the Johnny Collar ruling with the Yarn Ruling when it avers, with respect to (4), that it suffered irreparable harm as a result of the Johnny Collar ruling by experiencing an immediate and negative impact upon its business, and it also avers, based on supporting affidavits, that when Customs proposed the Revocation Ruling for comment the situation created "additional uncertainty" among its customers and caused further irreparable harm via curtailment of contemplated orders for its BKMY yarn. *See, e.g.*, Complaint ¶¶ 5 & 6.

The plaintiff asserts it has standing as a party, which, if it imported "the goods involved" as a non-resident importer and filed a protest that was denied in whole or in part, would have standing to bring a civil action under 28 U.S.C. §1581(a) to challenge a denial of its protest. However, the plaintiff's customers for its yarn are foreign garment manufacturers. *See* Yu Aff. ¶ 11; Lee Aff. ¶ 3, Ex. A. The court fails to discern how the "contemplated transaction," of an importation of the plaintiff's *yarn* into the United States, has been harmed in any way by the Revocation Ruling.

The plaintiff contends that the Revocation Ruling, which resulted in a lower tariff for the yarn at issue in this action, has caused it harm because strangers to this action -- garment manufacturers -- may no longer purchase its yarn unless the garments they make from it can be imported under the "favorable" duty rate accorded to importations of garments made of "metalized" yarn by other strangers to this action -- garment importers. Hence, the defendant argues that the plaintiff seeks to litigate "on behalf of" potential importers of garments, who are not presently before this court and are remote from the core of this case. Thus, the defendant argues the plaintiff does not have standing here as a result of the Revocation Ruling. Def's Resp. & Mot. to Dismiss at 2. *Cf.* 19 C.F.R. § 177.7(a), *supra*. The plaintiff counters that 28 U.S.C. §2631(h) confers prudential standing to any person who, if he imported the subject merchandise at some point in the future and received a denied protest from Customs, could challenge Custom's decision here; such a person would have standing to protest an adverse liquidation and the question then becomes one of remedy. See Pl's Reply at 4. That may be true, but it presumes a decision adverse to a specific imported good. *See generally Heartland By-Products, Inc. v. United States*, 26 CIT 268, 272-81, 223 F. Supp. 2d 1317, 1323-31 (2002) (discussing the history behind and scope of §1581(h)).

Under the current *status quo* resulting from the Revocation Ruling, if the plaintiff were to import the yarn into these United States, the yarn would benefit from the lower duty rate resulting from the Revocation Ruling. It is therefore plain that the importance to the plaintiff here is not the U.S. duty rate on the yarn, but the duty rate on garments made of it. The plaintiff implies that an Article III "case or controversy" exists over the classification of the yarn, but the harm that it pleads is not the type of cognizable injury that relief pursuant to section 1581(h) was intended to address. The aggrieved litigants in the cases to which the plaintiff cites for support on its irreparable harm argument all had prudential standing to challenge specific, identifiable importations of merchandise directly impacted by a particular ruling,[4] but that is not the case here. The proper consideration here is the "harm" that flows from the Revocation Ruling to a *direct* importation of the yarn versus importation under the Yarn Ruling. As the plaintiff acknowledges, "[n]o Article III justiciable 'case or controversy' exists under section 1581(a) when prosecution of a protest will not result in a duty refund." Pl's Br. at 15, citing *Vanderhoof Specialty Wood Prods. v. United States*, 28 CIT 354, 355 (2004); *3V, Inc. v. United States*, 23 CIT 1047, 1049 (1999); *Acrilicos v. Regan*, 9 CIT 442, 446 (1985); *Carson M. Simon & Co. v. United States*, 55 Cust. Ct. 103, 108 (1965) (dismissing claims as to entries that were entered at a rate lower than the claimed rate). On the other hand, garment importers are, of course, free to import and challenge any classification of garments made of BKMY in accordance with *United States v. Stone & Downer Co.*, 274 U.S. 225 (1927).

---

[4] *E.g.*, *Holford U.S.A. Ltd. v. United States*, 19 CIT 1486 (1995) (applicability of URAA grandfather clause to importer's textile contracts); *CPC Int'l, Inc. v. United States*, 19 CIT 978 (1995) (importer's pre-importation ruling as to country of origin marking); *Nat'l Juice Prods. Ass'n v. United States*, 10 CIT 48 (1986) (country-of-origin marking requirements' impact on juice product association's imports); *Manufacture de Machines du Haut-Rhin v. von Raab*, 6 CIT 60 (1983) (manufacture's challenge to exclusionary ruling affecting importation of its merchandise).

II

The plaintiff alternatively claims jurisdiction pursuant to the "administration and enforcement" provision of 28 U.S.C. §1581(i)(4). But typically, "if jurisdiction does not lie under § 1581(h), a plaintiff must import the merchandise in question, file a protest with Customs regarding the classification decision, and fully exhaust its administrative remedies." *Connor v. United States*, 24 CIT 195, 200 (2000). Section 1581(i) was not intended to create new causes of action or meant to supersede more specific jurisdictional provisions, *e.g., Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 CIT 584, 586, 717 F. Supp. 847, 849-50 (1989) (citations omitted), *aff'd*, 903 F.2d 1555 (Fed. Cir. 1990), and it is well-settled that "to prevent circumvention of the administrative processes crafted by Congress, jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008), citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006). In other words,

> "where a litigant has access to [the Court of International Trade] under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach by complying with all the relevant prerequisites thereto. It cannot circumvent the prerequisites of 1581(a) by invoking jurisdiction under 1581(i)" unless such traditional means are manifestly inadequate.

*Hartford*, 544 F.3d at 1292, quoting *Am. Air. Parcel Forwarding Co.*, *supra*, 718 F.2d at 1549. If "another remedy is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show how that remedy would be manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (citations omitted), *cert. denied*, 484 U.S. 1041 (1988).

The plaintiff cannot argue that the "traditional approach" of section 1581(a) to the classification claims it would attempt to assert here under the guise of section 1581(h) provides a manifestly inadequate remedy. As indicated above, it has no standing to assert such claims. The plaintiff's actual injury complaint here is that garment makers will not buy its yarn because importers of those garments will not get a more favorable duty rate for items made of the plaintiff's yarn. But the duty rate charged to those importers is beyond any of the plaintiff's interests that the provisions of section 1581 are meant to protect. The essence of the argument the plaintiff attempts to put forth amounts to a request for the protection of others' interests, namely those of importers of garments manufactured by purchasers of the plaintiff's yarn. Even if the plaintiff is protecting its own financial interests by extension, it has no authority or standing to assert the claims of those remote parties under 1581(i) in its action here, as that statute to be strictly construed.

*Conclusion*

For these reasons, the court must conclude there is no Article III case or controversy over this matter as contemplated under 28 U.S.C. §1581(h), nor does jurisdiction alternatively lie in 28 U.S.C. §1581(i)(4). The court will therefore grant the defendant's motion to dismiss this action, which in turn will moot certain outstanding motions on the docket. Judgment will enter accordingly.

So ordered.

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: December 13, 2013
New York, New York