# United States Court of Appeals for the Federal Circuit

---

**BEST KEY TEXTILES CO. LTD.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2014-1327

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00367-RKM, Senior Judge R. Kenton Musgrave.

---

Decided: February 3, 2015

---

JOHN M. PETERSON, Neville Peterson LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief were MARIA E. CELIS, RICHARD F. O'NEILL, and RUSSELL A. SEMMEL.

BEVERLY A. FARRELL, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARCELLA POWELL, Trial Attorney, of Washington, DC, and AMY M. RUBIN, Assistant Director,

International Trade Field Office, of New York, New York. Of counsel on the brief were CLAUDIA BURKE, Assistant Director, United States Department of Justice, of Washington, DC, and PAULA S. SMITH, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of Washington, DC.

PHILIP YALE SIMONS, Simons & Wiskin, of South Amboy, New Jersey, for amicus curiae. With him on the brief was JERRY P. WISKIN.

_____

Before DYK, O'MALLEY, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Appellant Best Key Textiles Co., Ltd. ("Best Key") appeals the decision of the United States Court of International Trade ("CIT") denying its Motion for Judgment on the Agency Record. *Best Key Textiles Co. v. United States* (*Best Key II*), No. 13-00367, slip op. 14-22 (Ct. Int'l Trade Feb. 25, 2014) (Appellant's App. ("App.") 1–27). Because the CIT did not have jurisdiction over the case, this court vacates and remands with instructions to dismiss for lack of jurisdiction.

## BACKGROUND

Best Key, a Hong Kong-based textile manufacturer, produces "Best Key Metalized Yarn" ("Best Key's yarn"), which is produced from "polyester chips melted into a slurry to which" metal nanopowders (usually zinc or aluminum) and titanium dioxide are added. *Id.* at 7. "The slurry is then 'fired' through a spinneret," forming monofilament yarns.[1] *Id.* The metal nanopowders "are

_____

[1]    "A 'monofilament' is a single-stranded polymer filament whose dimension is determined at the time of extrusion." Appellant's Br. 25–26.

permanently and inseparably combined with the polyester . . . at the moment of yarn formation." Appellant's Br. 4.

On October 3, 2011, Appellant sought a pre-importation ruling from United States Customs and Border Protection ("Customs") pursuant to 19 C.F.R. § 177.2 (2011) concerning the proper tariff classification in the Harmonized Tariff Schedule of the United States ("HTSUS") of Best Key's yarn. With the request, Best Key included a laboratory report describing the yarn as having a fiber content of 100% polyester, with one type containing 0.7% metal by weight and a second type containing 0.74% metal by weight.

In Customs New York Ruling N187601 (Oct. 25, 2011) (App. 41–42) (the "Yarn Ruling"), Customs classified Best Key's yarn as metalized yarn of HTSUS 5605.00.90 (2011), dutiable at 13.2% ad valorum, based on Best Key's laboratory reports and samples of the yarn submitted to Customs. HTSUS 5605.00.90 covers: "Metalized yarn, whether or not gimped, being textile yarn, or strip or the like of heading 5404 or 5405, combined with metal in the form of thread, strip or powder or covered with metal: Other." HTSUS 5404 and 5405, referenced by HTSUS 5605.00.90, cover "synthetic and artificial monofilament[, respectively,] of 67 decitex[2] or more and of which no cross-sectional dimension exceeds 1 mm; strip and the like (for example, artificial straw) of [synthetic or artificial, respectively] textile materials of an apparent width not exceeding 5 mm." In the Yarn Ruling, Customs stated "[f]or tariff purposes, a yarn combined with metal in the form of powder is considered a metalized yarn." App. 41. While metalized yarns of heading 5605 carry a higher duty rate than non-metalized yarns, metalized yarns can

---

[2]    "Decitex refers to the articles' linear mass density, or fineness." *Best Key II*, at 7.

be used to make apparel products that carry a much lower duty rate than garments made from non-metalized yarns.

On December 5, 2011, Best Key requested a Customs Ruling regarding the proper classification of a sample "Johnny Collar" men's knit pullover garment made of Best Key's yarn. Citing the Yarn Ruling, Appellant asserted the pullover was classifiable under HTSUS 6105.90.8030 as a men's shirt of other textile materials with a duty rate of 5.6% ad valorem, as opposed to HTSUS 6110.30.3053 for men's shirts made of polyester, which carries a duty rate of 32% ad valorem. Customs conducted its own laboratory report, finding trace amounts of metal in the shirt. Based on this small amount of metal and the sample's label that stated "100% polyester," Customs classified the sample as a pullover of man-made non-metalized fibers under HTSUS 6110.30.3053 in Customs New York Ruling N196161 (Apr. 13, 2012) ("the Johnny Collar Ruling") (App. 94–95).

Appellant requested a reconsideration of the Johnny Collar Ruling. In response, Customs Headquarters reviewed both the Yarn Ruling and the Johnny Collar Ruling, along with additional submissions from Best Key. On April 24, 2013, Customs published notices of proposed revocation of both rulings, providing for a thirty-day period for public comment. *Proposed Revocation of Ruling Letter & Proposed Revocation of Treatment Relating to the Tariff Classification of a "Johnny Collar" Pullover Garment*, 47 Cust. B. & Dec. No. 18, at 26 (Apr. 24, 2013) (App. 126–28); *Proposed Revocation of Ruling Letter & Proposed Revocation of Treatment Relating to the Tariff Classification of a Polyester Monofilament Yarn*, 47 Cust. B. & Dec. No. 18, at 33 (Apr. 24, 2013) (App. 129–31). Customs received comments from Best Key and one other commenter on the proposed Yarn Ruling Revocation, but received no comments on the proposed Johnny Collar Ruling Revocation.

Subsequently, pursuant to 19 U.S.C. § 1625(c) (2006), Customs revoked the Yarn Ruling, replacing it with Customs Headquarters Ruling H202560 (Sept. 17, 2013). *Revocation of Ruling Letter & Revocation of Treatment Relating to the Tariff Classification of a Polyester Monofilament Yarn*, 47 Cust. B. & Dec. No. 41, at 20 (Oct. 2, 2013) (App. 48–59) (the "Revocation"). In the Revocation, Customs reclassified Best Key's yarn as a polyester yarn (instead of a metalized yarn) under HTSUS 5402.47.90 with a duty rate of 8% ad valorum, which is lower than the 13.2% ad valorem duty rate that applies to HTSUS 5605. *Id.* HTSUS 5402.47.90 covers "Synthetic filament yarn (other than sewing thread), not put up for retail sale, including synthetic monofilament of less than 67 decitex: Other, of polyester: Other."

Customs also revoked the Johnny Collar Ruling because it conflicted with the Yarn Ruling and replaced it with Customs Headquarters Ruling H226262 (Sept. 17, 2013), which continued to classify the Johnny Collar pullover under HTSUS 6110.30.30 (men's shirts made of polyester). *Revocation of Ruling Letter & Revocation of Treatment Relating to the Tariff Classification of a "Johnny Collar" Pullover Garment*, 47 Cust. B. & Dec. No. 41, at 15 (Oct. 2, 2013) (App. 43–48).

Appellant challenged the Yarn Ruling Revocation, but not the revocation of the Johnny Collar Ruling, before the CIT, but the court dismissed the action for lack of subject matter jurisdiction. *Best Key Textiles Co. v. United States* (*Best Key I*), No. 13-00367, slip op. 13-148, at 1 (Ct. Int'l Trade Dec. 13, 2013) (Appellee's App. 81–88). The CIT subsequently granted Best Key's Motion for Reconsideration, and reversed its prior jurisdictional holding, finding jurisdiction existed under 28 U.S.C. § 1581(i)(4) (2012). *Best Key II*, at 2. On the merits, however, the CIT denied Best Key's Motion for Judgment on the Agency Record, thereby sustaining the Revocation. *Id.* at 27.

Best Key appeals.  This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

The Government claims the CIT lacked jurisdiction over Best Key's claim, and therefore this action should be dismissed.  The CIT's limited jurisdiction is articulated in 28 U.S.C. § 1581(a) through (i).  While subsection (a) vests the CIT with "exclusive jurisdiction of any civil action commenced to contest the denial of a protest [by Customs]," subsections (b) through (h) delineate other specific grants of jurisdiction.  Under § 1581(h), the CIT has

> exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

28 U.S.C. § 1581(h).  In addition, an action under § 1581(h) may only be commenced "by the person who would have standing to bring a civil action under [§] 1581(a) . . . if he imported the goods involved and filed a protest which was denied." *Id.* § 2631(h).  Accordingly, this court has articulated four requirements to invoke jurisdiction under § 1581(h):

> (1) judicial review must be sought *prior* to importation of goods;

> (2) review must be sought of a ruling, a refusal to issue a ruling or a refusal to change such ruling;

(3) the ruling must relate to certain subject matter; and

(4) irreparable harm must be shown unless judicial review is obtained *prior to* importation.

*Am. Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1551–52 (Fed. Cir. 1983).

The statute also contains a "residual jurisdiction" provision under § 1581(i), which provides:

(i) In addition to the jurisdiction conferred upon the [CIT] by subsections (a)–(h) of this section . . . , the [CIT] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) *administration and enforcement* with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i) (emphasis added).

As this court has noted, "[w]hile the residual jurisdiction provision is a 'catch all provision,' '[a]n overly broad interpretation of this provision . . . would threaten to swallow the specific grants of jurisdiction contained within the other subsections and their corresponding requirements.'" *Chemsol, LLC v. United States*, 755 F.3d

1345, 1349 (Fed. Cir. 2014) (quoting *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012)). For this reason, "this court has repeatedly held that subsection (i) 'may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.'" *Id.* (quoting *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012) (internal quotation marks omitted)). In other words, if a litigant has access to the CIT under subsections (a) through (h), "'it must avail itself of this avenue of approach by complying with all the relevant prerequisites thereto'" unless the remedy available under another subsection is "manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008) (quoting *Am. Air Parcel*, 718 F.2d at 1549).

In *Best Key I*, the CIT "conclude[d] there is no Article III case or controversy over this matter as contemplated under 28 U.S.C. § 1581(h), nor does jurisdiction alternatively lie in 28 U.S.C. § 1581(i)(4)." *Best Key I*, at 8. As to jurisdiction under § 1581(h), the CIT stated that Best Key satisfied requirements (1) and (2) for (h) jurisdiction, "but with regard to (3), [Best Key] conflates the Johnny Collar ruling with the Yarn Ruling when it avers, with respect to (4), that it suffered irreparable harm as a result of the Johnny Collar ruling by experiencing an immediate and negative impact upon its business." *Id.* at 4. The CIT explained, "[u]nder the current *status quo* resulting from the Revocation Ruling, if [Best Key] were to import the yarn into the United States, the yarn would benefit from the lower duty rate resulting from the Revocation Ruling," and "[i]t is therefore plain that the importance to [Best Key] here is not the U.S. duty rate on the yarn, but the duty rate on garments made of it." *Id.* at 6. Therefore, the CIT concluded, Best Key "implies that an Article Ill 'case or controversy' exists over the classification of the yarn, but the harm that it pleads is not the type of cog-

nizable injury that relief pursuant to [§] 1581(h) was intended to address." *Id.*; *see also id.* at 5 (Best Key "contends that the Revocation Ruling, which resulted in a lower tariff for the yarn at issue in this action, has caused it harm because strangers to this action—garment manufacturers—may no longer purchase its yarn unless the garments they make from it can be imported under the 'favorable' duty rate accorded to importations of garments made of 'metalized' yarn by other strangers to this action—garment importers.").

As to jurisdiction under § 1581(i)(4), the residual jurisdiction section's "administration and enforcement" provision, the CIT first noted that "typically, 'if jurisdiction does not lie under § 1581(h), a plaintiff must import the merchandise in question, file a protest with Customs regarding the classification decision, and fully exhaust its administrative remedies.'" *Id.* at 7 (quoting *Connor v. United States,* 24 CIT 195, 200 (2000)). The CIT found Best Key failed to show that the "traditional approach" under § 1581(a) would provide a manifestly inadequate remedy, and that Best Key's actual injury amounts to garment makers not buying its yarn "because importers of those garments will not get a more favorable duty rate for items made of [Best Key's] yarn. But the duty rate charged to those importers is beyond any of [Best Key's] interests that the provisions of [§] 1581 are meant to protect." *Id.* at 8. Accordingly, the CIT concluded, "[t]he essence of the argument [Best Key] attempts to put forth amounts to a request for the protection of others' interests, namely those of importers of garments manufactured by purchasers of [Best Key's] yarn." *Id.* The court also found, "[e]ven if [Best Key] is protecting its own financial interests by extension, it has no authority or standing to assert the claims of those remote parties under [§] 1581(i) in its action here, as that statute [is] to be strictly construed." *Id.*

On rehearing, however, the CIT reversed its jurisdictional holding. In *Best Key II*, the CIT stated "it is highly questionable whether a Customs' ruling that lowers the rate of duty on a product the plaintiff has no expressed intention of importing can result in aggrievement or adverse effect to the plaintiff." *Best Key II*, at 2 (internal quotation marks and citation omitted). Nevertheless, the CIT concluded, without further explanation:

> While the court stands by its prior ruling in general, it is, nonetheless, [Best Key's] product that is the subject of the ruling at issue, and the court has undoubted exclusive jurisdiction over the general administration and enforcement of this type of matter in 28 U.S.C. § 1581(i)(4). The court will therefore *presume* Customs' ruling "reviewable," and the complaint's allegation of "aggrievement" sufficient to invoke jurisdiction under [§] 1581(i)(4).

*Id.* (citation omitted) (emphasis added). The CIT therefore proceeded to the merits under the *presumption* it had jurisdiction under § 1581(i)(4).

On appeal, the Government argues the CIT improperly proceeded under § 1581(i) and that its original jurisdictional holding in *Best Key I* was correct. In support, the Government notes "Best Key does not import its yarn and the Revocation Ruling actually lowered the duty rate on that product." Appellee's Br. 13. Therefore, "the true nature of Best Key's action is not the classification of the yarn in the Revocation Ruling but the classification of garments made of its yarn that would be imported into the United States by others." *Id.* In addition, the Government argues that another jurisdictional avenue exists under § 1581(a) for those injured by the Revocation, thereby rendering jurisdiction under the residual provision inappropriate. In particular, the Government points out "Best Key could import another Johnny Collar pullo-

ver made of its yarn, wait for the entry to be liquidated, protest the classification of the garment, and, if the protest is denied, bring a [§] 1581(a) action in the [CIT] to obtain the classification it seeks." *Id.* at 14 n.5. Using this approach, Best Key could even seek accelerated disposition of its protest under § 1515(b). *Id.* Further, the Government argues, § 1581(i) "was not intended to create new causes of action, nor was it meant to supersede more specific jurisdictional provisions . . . , [and] should not be used to hear issues such as a business harm occurring exclusively overseas which flows from a Customs decision." *Id.* at 14 (citations omitted).

In response, Best Key says the protest remedy under § 1581(a) is neither available nor adequate. As an initial matter, Best Key concedes it "does not import its yarn and the Revocation lowered the duty thereon, meaning a protest remedy involving the yarn is not available." Reply Br. 4 (citation omitted). At the same time, Best Key continues to argue the remedy it seeks is a reversal of the Revocation of the Yarn Ruling, even though this would result in a higher duty rate on Best Key's yarn, because the Revocation "caused Best Key's customers to cancel orders *en masse*." *Id.* Thus, to Best Key, "a § 1581(a) action that does not directly challenge the Revocation is 'manifestly inadequate' to vindicate the status that Best Key enjoyed as a ruling holder." *Id.* at 7. Allowing a challenge to the Revocation is the only way, according to Best Key, to remedy the harm it has suffered: "harm via curtailment of *contemplated* orders for [Best Key's] yarn." *Id.* (internal quotation marks and citation omitted) (emphasis added).

The CIT erred in reversing itself and "presum[ing]" jurisdiction under § 1581(i)(4). *See Best Key II*, at 2. The CIT itself did not appear fully convinced jurisdiction was proper because Best Key is attempting to litigate on behalf of its customers who might be injured by the revocation of the Johnny Collar Ruling in an action challeng-

ing the Revocation of the Yarn Ruling. Best Key acknowledges the remedy it seeks is a reversal of the Yarn Ruling Revocation, which resulted in a more favorable duty rate for Best Key. Indeed, Best Key concedes it is attempting to vindicate its "entitlement to maintenance of the Yarn Ruling, which was revoked." Reply Br. 5. However, the harm caused by the Yarn Ruling Revocation flowed to potential customers of Best Key who produce Johnny Collar pullovers, which *might* be subject to a lower duty rate if the Yarn Ruling had remained in effect. It is worth noting, however, that Customs classified the Johnny Collar pullover under HTSUS 6110.30.30 for men's shirts made of polyester in both the Johnny Collar Ruling and the subsequent revocation of that ruling.

The proper "avenue of approach" to redress this harm is a challenge under § 1581(a). *See Hartford Fire,* 544 F.3d at 1292. That is, any producer who imports items made from Best Key's yarn and believes the merchandise should be subject to a lower duty rate should protest the classification and challenge any denial of its protest before the CIT. The present action, where Best Key seeks to undo an administrative decision made in its favor so that its customers might benefit from a lower duty rate, contemplates the creation of a new cause of action under § 1581(i), but § 1581(i) "was not intended to create new causes of action nor was it meant to supersede more specific jurisdictional provisions." *Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 717 F. Supp. 847, 849 (Ct. Int'l Trade 1989) (internal quotation marks omitted), *aff'd*, 903 F.2d 1555 (Fed. Cir. 1990) (quoting H. Rep. No. 1235, 96th Cong., 2d Sess. 47, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3759).

Here, Best Key sought to have the CIT reverse the Revocation, favorable to Best Key, the effect of which would be to increase Best Key's own duty rate while benefiting manufacturers of products made from Best Key's yarn. The statute does not provide jurisdiction over

such requests.  Indeed, as the CIT observed, it was "unaware of any other suit brought against the government on the claim that the plaintiff or its property should be assessed a higher rate of tax or duty," *Best Key II*, at 2 n.1, and Best Key points to none.

Accordingly, the CIT erred in exercising jurisdiction over this case and should have upheld its initial ruling that jurisdiction did not exist over this action.

CONCLUSION

For the foregoing reasons, the decision of the United States Court of International Trade is

**VACATED AND REMANDED**