# United States Court of Appeals for the Federal Circuit

---

**ARP MATERIALS, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-2176

---

Appeal from the United States Court of International Trade in No. 1:20-cv-00144-MMB, Judge M. Miller Baker.

--------------------------------------------------

**THE HARRISON STEEL CASTINGS COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-2177

---

Appeal from the United States Court of International Trade in No. 1:20-cv-00147-MMB, Judge M. Miller Baker.

—————————————

Decided:  September 6, 2022

—————————————

CHRISTOPHER M. KANE, Simon Gluck & Kane LLP, New York, NY, argued for plaintiffs-appellants.  Also represented by MARIANA DEL RIO KOSTENWEIN, DANIEL J. GLUCK.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM; VALERIE SORENSEN-CLARK, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, New York, NY.

—————————————

Before HUGHES, LINN, and STOLL, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Importers ARP Materials, Inc. and The Harrison Steel Castings Company seek refunds of estimated duties they deposited with the United States Customs and Border Protection for tariffs that the United States Trade Representative retroactively rescinded. The United States Court of International Trade dismissed the importers' amended complaints for lack of jurisdiction. ARP and Harrison appeal. The jurisdictional provision on which the importers rely, 28 U.S.C. § 1581(i), may not be invoked when jurisdiction under another subsection of § 1581 could have been available and would have provided an adequate remedy if timely invoked. We affirm the court's dismissals because jurisdiction would have been available under § 1581(a) had the importers timely protested Customs' classification decisions and because failure to invoke an available remedy

within the timeframe prescribed does not render the remedy manifestly inadequate.

## I

## A

Section 301 of the Trade Act of 1974 authorizes the Office of the United States Trade Representative (USTR) to investigate and enforce domestic rights under trade agreements and to respond to certain foreign trade practices. 19 U.S.C. § 2411. Under this authority, USTR began investigating certain Chinese trade practices in August 2017. It found that some of China's trade practices "related to intellectual property, innovation, and technology were unreasonable or discriminatory, and burden[ed] or restrict[ed] U.S. commerce." U.S. Gov't Accountability Off., GAO-21-506, Report to Congressional Requesters: U.S.–China Trade 3 (2021)). "To help obtain the elimination of" those trade practices, USTR, "at the direction of the President, placed additional tariffs on certain products from China starting in July 2018." *Id.* at 1. USTR issued four lists of product categories subject to the new tariffs. *Id.* at 4. Relevant to this appeal, USTR imposed a 25% tariff on List 2 product categories in August 2018 and a 10% tariff on List 3 product categories in September 2018. *Id.*

"[T]o mitigate the potential harm of these tariffs on U.S. companies and workers," USTR established, "for the first and only time," an opportunity for domestic stakeholders "to request to exclude particular products from the additional tariffs." *Id.* at 1, 6; *see also* 83 Fed. Reg. 40,823, 40,824 (Aug. 16, 2018) (for List 2); 84 Fed. Reg. 20,459, 20,460 (May 9, 2019) (for List 3). USTR informed importers that any exclusion granted would "apply to the particular product covered by the exclusion" rather than the "particular producer[] or exporter[]" who requested the exclusion. *ARP Materials, Inc. v. United States*, 520 F. Supp. 3d 1341, 1349 (Ct. Int'l Trade 2021) (*Decision*). These exclusions were thus "product-specific," meaning that "the grant of an

exclusion in response to one importer's application could apply to like products imported by other entities." *Id.*; *see also* 84 Fed. Reg. 37,381, 37,381 (July 31, 2019) ("[T]he exclusions are available for any product that meets the description in the Annex, regardless of whether the importer filed an exclusion request."). These exclusions were applied retroactively to the effective date of each tariff—August 23, 2018 for List 2[1] and September 24, 2018 for List 3.[2] *See* 84 Fed. Reg. at 37,381; 84 Fed. Reg. 38,717, 38,717 (Aug. 7, 2019).

USTR declared that Customs "w[ould] issue instructions on entry guidance and implementation," and it instructed importers to reach out to Customs directly. 84 Fed. Reg. at 37,381. It further provided contact information for importers to do so—for answers to any specific questions importers might have about "[C]ustoms classification or implementation of the product exclusions." *Id.*; *see also Decision* at 1349 ("Just as . . . USTR's initial imposition of [§] 301 duties was not self-executing as to any entry of goods and instead depended upon Customs' classification of the entry as subject to such duties, . . . USTR's retroactive exclusions were not self-executing as to the eligible goods.").

On May 22, 2019, Customs published instructions detailing how importers could obtain refunds of previously paid § 301 tariffs on eligible imports. *See* U.S. Customs & Border Prot., CSMS No. 19000260, Section 301 Products Excluded from Duties - Liquidation Extension Request (2019). For entries covered by granted product exclusions, Customs instructed importers as follows:

---

[1]    ARP's relevant merchandise was classified under List 2. *Decision* at 1350.

[2]    Harrison's relevant merchandise was classified under List 3. *Decision* at 1352.

> Once a product exclusion is granted by USTR, an Importer of Record (IOR) may request an administrative refund by filing a Post Summary Correction (PSC) for unliquidated entries that are covered by the exclusion. If an entry is liquidated prior to the filing of a PSC, a party may file a protest.

*Id.* For entries covered by pending product exclusion requests, Customs provided these instructions:

> As the IOR, *if you* have a pending product exclusion request with USTR, or *are importing a product that is covered by such a pending exclusion request, and you are concerned that a corresponding entry may liquidate before USTR renders a decision on the exclusion request, you can*:
>
>> (1) *request an extension of the liquidation deadline, and file a PSC no later than 15 days before the extended date of liquidation*; and/or
>>
>> (2) file a protest within the 180 day period following liquidation. When filing a protest, the protestant should identify the pending product exclusion decision from USTR as a basis for the protest. Upon receiving USTR's decision on the product exclusion, the protestant should submit the exclusion information to [Customs], as additional information pursuant to 19 C.F.R. [§] 174.28.
>
> If a protest is filed, [Customs] will postpone making a determination on protests that include a claim identifying a pending product exclusion. Once USTR completes the exclusion process, [i.e., rules on the product exclusion request,] [Customs] will process these protests pursuant to USTR's exclusion determination. That is, [Customs] will refrain

> from denying or granting a party's protest before the importer receives a final determination from USTR regarding its product exclusion request.

*Id.* (emphases added). Customs reissued substantially similar instructions immediately following each notice of product exclusion that USTR published. *See, e.g.*, U.S. Customs & Border Prot., CSMS No. 39169565, GUIDANCE: Seventh Round of Products Excluded from Section 301 Duties (Tranche 2) (2019) ("To request a refund of [§] 301 duties paid on previous imports of duty-excluded products granted by . . . USTR, importers . . . may protest the liquidation."); U.S. Customs & Border Prot., CSMS No. 42181055, GUIDANCE: Section 301 Tranche 3 - $200B Eleventh Round of Product Exclusions from China (2020) (substantially identical instructions).

## B

ARP "made five entries (importations) of merchandise" that Customs had classified under subheading 3901.90.1000 (on List 2) of the Harmonized Tariff Schedule of the United States (HTSUS), "render[ing] the entries liable for [§] 301 duties," i.e., "subject to [§] 301 tariffs on the dates of entry."[3] *Decision* at 1350. On July 31, 2019, after the five entries were made, USTR granted exclusion requests submitted by other importers that covered the same category of products as ARP's merchandise. 84 Fed. Reg. at 37,382. These exclusions applied retroactively to

---

[3] ARP made its first entry of merchandise, No. F57-4005259-6 (entry '5259-6), on August 30, 2018; its second entry, No. F57-4004968-3 (entry '4968-3), on September 21, 2018; its third entry, No. F57-4005369-3 (entry '5369-3), on September 24, 2018; its fourth entry, No. F57-4005611-8 (entry '5611-8), on September 27, 2018; and its fifth entry, No. F57-4007552-2 (entry '7552-2) on July 17, 2019. *Decision* at 1352.

August 23, 2018—before ARP's entries—and remained in effect through July 31, 2020. On March 2, 2020, seven months after USTR had published its exclusion notice and 199 days following liquidation,[4] ARP protested Customs' assessment of § 301 duties on entries '4968-3 and '5369-3. *Decision* at 1351–52. Customs denied the protest as untimely since ARP had failed to file the protest within 180 days of the entries' liquidation date. *Id.* at 1351; *see also* 19 U.S.C. § 1514(c)(3)(A) ("A protest of a decision, order, or finding described in subsection (a) shall be filed with [Customs] within 180 days after but not before . . . [the] date of liquidation or reliquidation."). On June 27, 2020, ARP timely filed a protest for entry '7552-2. *Decision* at 1351–52. Since it had filed that protest just 15 days after the entry's liquidation,[5] Customs granted the protest, reclassified the entry, and refunded ARP the § 301 duties it had paid for that entry. *Id.* at 1351. "ARP did not file protests for entries '5259-6 and '5611-8."[6] *Id.*

Harrison made two entries of merchandise—one on September 27, 2018, and the other on October 12, 2018—that Customs classified under HTSUS subheading 8302.30.3060 (on List 3), rendering the entries liable for § 301 duties. On March 26, 2020, USTR "granted exclusion requests submitted by other importers that covered the same category of products as Harrison's." *Id.* at 1352; *see also* 85 Fed. Reg. 17,158, 17,160 (Mar. 26, 2020). These exclusions applied retroactively to September 24, 2018—before Harrison's entries—and remained in effect through

---

[4]    The liquidation date for entries '4968-3 and '5369-3 was August 16, 2019. *Decision* at 1352.

[5]    The liquidation date for entry '7552-2 was June 12, 2020. *Decision* at 1352.

[6]    The liquidation date for entry '5259-6 was July 26, 2019. *Decision* at 1352. The liquidation date for entry '5611-8 was August 23, 2019. *Id.*

August 7, 2020. On March 31, 2020, five days after USTR had published its exclusion notice but more than 180 days after the liquidation dates for the two entries at issue,[7] "Harrison filed a protest challenging Customs' assessment of [§] 301 duties on these entries *and* two other entries not included in Harrison's complaint." *Decision* at 1353 & n.22. "Customs denied the protest as untimely as to the two entries at issue but granted the protest as to the other two entries." *Id.*

After Customs denied their protests, ARP and Harrison commenced civil actions against the government in the Court of International Trade, both invoking 28 U.S.C. § 1581(i) as the jurisdictional basis for their suits. In "their substantially identical complaints," the importers alleged that the government was "in wrongful possession of" certain § 301 duties they had paid since "USTR ha[d] determined that no such duties apply *ab initio* to the date of implementation of [§] 301 duties on [Lists 2 and 3] of the affected items previously announced by . . . USTR." *Id.* at 1354 (third alteration in original); *see also id.* at 1354 n.24 (explaining that "the two amended complaints are substantively identical aside from references to the plaintiffs' names and a few minor wording differences"). The importers seek to compel refunds for the § 301 duties that USTR had imposed but retroactively rescinded after Customs had liquidated them.

The government moved to dismiss ARP's and Harrison's actions, and the Court of International Trade granted

---

[7]    The liquidation date for the first entry of merchandise, No. 555-0666283-6 (entry '6283-6), was August 23, 2019. *Decision* at 1354. The liquidation date for the second entry of merchandise, No. 555-0666818-9 (entry '6818-9), was September 6, 2019. *Id.*

the motions.[8] The court held that it lacks subject matter jurisdiction under § 1581(i) as to the entries challenged in this appeal. In the court's view, "jurisdiction would have existed here under § 1581(a) had [the importers] timely protested Customs' classification decisions that resulted in their erroneous liability for [§] 301 duties," and failure to timely invoke the importers' available remedy under § 1581(a) did not render the remedy inadequate. *Id.* at 1361. The court pointed out that the importers "had adequate notice of the procedures they were to follow to correct Customs' erroneous classification decisions." *Id.* at 1362. Indeed, the court highlighted, the importers "did follow those procedures to receive refunds as to certain entries." *Id.* They simply and "regrettably dropped the ball" when they failed to timely protest the classification decisions for "the entries remaining at issue here." *Id.* Because a remedy would have been available under § 1581(a), the court determined that it lacked subject matter jurisdiction under the "catch-all" provision, § 1581(i). The court accordingly granted the government's motions to dismiss under Federal Rule of Civil Procedure 12(b)(1).

ARP and Harrison appeal. Because they make the same arguments, we address them together. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

We review the Court of International Trade's "decision to grant the government's motions to dismiss for lack of subject matter jurisdiction de novo as a question of law." *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (cleaned up).

---

[8]    The Court of International Trade consolidated ARP's and Harrison's actions on September 8, 2020, designating these cases as "test cases" pursuant to United States Court of International Trade Rule 83(e).

The Court of International Trade's jurisdiction is governed by 28 U.S.C. § 1581, with each of its subsections "delineat[ing] particular laws over which the Court of International Trade may assert jurisdiction." *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988). The two provisions relevant to this appeal are § 1581(a) and (i).

Section 1581(a) grants the Court of International Trade "exclusive jurisdiction [over] any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." 28 U.S.C. § 1581(a). "Section 1515 provides for Customs' review and subsequent allowance or denial of protests that are 'filed in accordance with' 19 U.S.C. § 1514." *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002) (quoting 19 U.S.C. § 1515(a)). Section 1514 details the types of Customs decisions "that may be the subject of protests," including "decisions relating to 'the liquidation or reliquidation of an entry.'" *Id.* (quoting 19 U.S.C. § 1514(a)(5)). "[T]he Court of International Trade's authority to hear a claim under [§] 1581(a) depends upon the importer raising the claim in a valid protest filed with Customs within the prescribed [180]-day period, or alternatively, in a protest coming within an exception that excuses a failure to meet the deadline." *Id.*

Section 1581(i) confers jurisdiction over a civil action arising out of any federal law providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B). Though we describe § 1581(i) as a "catch-all" provision, "its scope is strictly limited." *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992). "Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate." *Id.* (citation omitted). "This preserves the congressionally

mandated procedures and safeguards provided in the other subsections, absent which litigants could ignore the precepts of subsections (a)–(h) and immediately file suit in the Court of International Trade under subsection (i)." *Id.* (internal citations omitted).

An inquiry into § 1581(i) jurisdiction is thus a two-step process. "First, we consider whether jurisdiction under a subsection other than § 1581(i) was available." *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019). Second, "if jurisdiction was available under a different subsection of § 1581, we [then] examine whether the remedy provided under that subsection is 'manifestly inadequate.'" *Id.*

A

ARP and Harrison challenge the Court of International Trade's decision holding that jurisdiction under § 1581(a) would have been available had the importers "timely protested Customs' classification decisions that resulted in their erroneous liability for [§] 301 duties." *Decision* at 1361. The crux of ARP's and Harrison's arguments is that "the fundamental issues" they raise involve USTR's exclusion decisions, "**not** the purely ministerial involvement of [Customs] in the effectuation of the decisions of . . . USTR under [§] 301." Appellants' Br. 3. So, they contend, they were not required to file protests. *Id.* at 18 (relying on *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1354–55 (Fed. Cir. 2006), "because it among many cases demonstrates that the challenge of decisions of an agency **other than** [Customs] does not require the filing of a protest"). In the importers' view, Customs' role was ministerial because Customs' "hands were tied by the decisions of . . . USTR, without which [§] 301 duties could not be collected by [Customs]." *Id.* at 22; *see also Indus. Chems., Inc. v. United States*, 941 F.3d 1368, 1371 (Fed. Cir. 2019) ("'Customs must [have] engage[d] in some sort of decision-making process in order for there to be a protestable decision.'

This is because Customs must have the 'authority to grant relief in [the] protest action.'" (alterations in original) (citations omitted)).

But "the protest procedure cannot be [so] easily circumvented." *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *see Norsk Hydro Can.*, 472 F.3d at 1355 ("[A] party may not expand a court's jurisdiction by creative pleading."). "To prevent usurpation of the protest scheme Congress has crafted, it is of utmost importance that mere recitation of a basis for jurisdiction not be controlling." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008). Instead, "[w]e look to the 'true nature of the action' in determining whether the [Court of International Trade] properly found jurisdiction lacking." *Hutchison*, 827 F.3d at 1360 (citation omitted). This "will depend upon the attendant facts asserted in the pleadings." *Id.* Thus, "[d]etermining the true nature of an action under § 1581" requires that we "discern the particular agency action that is the source of the alleged harm so that we may identify which subsection of § 1581 provides the appropriate vehicle for judicial review." *Id.*

Here, the importers allege that the government "remains in wrongful possession of the [§] 301 duties on [the importers'] entries of [certain] merchandise as . . . USTR ha[d] determined that no such duties apply *ab initio* to the date of implementation of [such] duties." Appx53, 59. And they request that the Court of International Trade "order refund of the monies due through reliquidation of the involved entries." Appx54, 60. Thus, as characterized by the importers themselves, the source of their alleged harm is Customs' classification decisions that "USTR's retroactive exclusions rendered erroneous." *Decision* at 1359–60 ("According to Plaintiffs, the USTR's retroactive exclusions rendered Customs' classification of their merchandise under those subheadings 'wrongful.'"). These classification decisions are necessarily protestable "decisions" because "[p]roper classification of goods under the HTSUS"

requires the agency to "first ascertain[] the meaning of specific terms in the tariff provisions and then determin[e] whether the subject merchandise comes within the description of those terms"—the first question being one of law, the second being one of fact. *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). Customs made substantive legal determinations—interpreting the HTSUS subheadings—and factual determinations—determining whether the entries fell within those subheadings—that it had the authority to make. *See Hutchison*, 827 F.3d at 1362 ("Indeed, when Customs makes a decision to liquidate, that decision is '[m]ore than passive or ministerial' and 'constitute[s] a "decision" within the context of § 1514(a).'" (alterations in original) (quoting *Cemex, S.A. v. United States*, 384 F.3d 1314, 1324 (Fed. Cir. 2004))).

Accordingly, this case "presents exactly the scenario in which § 1514's protest provisions can be invoked because Customs engaged in some sort of decision-making process." *Chemsol, LLC v. United States*, 755 F.3d 1345, 1351 (Fed. Cir. 2014) (citation omitted) (cleaned up). Because the importers contend that USTR's exclusions rendered Customs' classifications of their entries erroneous, they were statutorily obligated to timely protest under 19 U.S.C. § 1514(a)(2). That Customs' classification decisions became erroneous after USTR granted retroactive exclusions is irrelevant. The obligation to protest a Customs classification error does not turn on whether it was erroneous *ab initio* or became erroneous because of retroactive administrative action. It instead turns on whether Customs' classifications of the importers' entries were protestable "decisions" under 19 U.S.C. § 1514, and we hold that these classifications were such protestable "decisions."

B

Because a remedy would have been available under § 1581(a) had the importers timely protested Customs'

classification decisions, ARP and Harrison cannot invoke the Court of International Trade's residual jurisdiction under § 1581(i) unless they show that the relief in § 1581(a) would have been manifestly inadequate. *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995). But neither ARP nor Harrison can meet this burden because "a remedy is not inadequate 'simply because [the importer] failed to invoke it within the time frame [that is] prescribe[d].'" *Id.* (citation omitted). "[T]o be manifestly inadequate, the protest must be an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193–94 (Fed. Cir. 2018) (cleaned up).

Here, the importers' successful protests, for example, for entry '7552-2, were "far from being exercises in futility." *Decision* at 1361. Had ARP protested within 180 days following the liquidation for each entry now at issue, ARP would have had the opportunity to protest Customs' assessments of § 301 duties underlying the challenged entries' liquidations. *See Juice Farms*, 68 F.3d at 1346 ("If Juice Farms had protested within ninety days of bulletin notices, it would have had an opportunity to protest the legality of Customs' liquidations in the Court of International Trade."). Indeed, ARP had ample opportunity to file such protests. Of its five entries at issue, ARP's earliest protest deadline—i.e., 180 days after an entry's liquidation—was January 22, 2020. Yet ARP did not protest any of Customs' classification decisions until March 2, 2020, more than seven months after USTR had issued the applicable relevant product exclusion notice. The opportunity to protest is not an inadequate remedy "simply because [ARP] failed to invoke it within the time frame . . . prescribe[d]." *Id.* at 1346 (citation omitted). ARP "had an adequate remedy for its alleged erroneous liquidation[s], but it lost that remedy because its protest[s] w[ere] untimely," or not made at all, "not because the remedy was inadequate." *Carbon*

*Activated Corp. v. United States*, 6 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2014), *aff'd*, 791 F.3d 1312 (Fed. Cir. 2015); *see also Hutchison*, 827 F.3d at 1362 ("The record demonstrates that Hutchison not only could have filed a protest, but that it in fact did so after Customs liquidated its entries. Hutchison's incorrect 'belief that it had no remedy under § 1581(a) [does] not make that remedy inadequate,' and in any event is belied by the actions Hutchison took prior to filing suit." (alteration in original) (quoting *Hartford Fire*, 544 F.3d at 1294)).

Similarly, had Harrison timely requested an extension of the liquidation deadlines for the entries at issue, Harrison would have had the opportunity to request a refund by filing a Post Summary Correction "no later than 15 days before the extended date of liquidation." U.S. Customs & Border Prot., CSMS No. 19000260, Section 301 Products Excluded from Duties - Liquidation Extension Request (2019) (providing instructions for importers that "have a pending product exclusion request with USTR, or are importing a product that is covered by such a pending exclusion request, and [who] are concerned that a corresponding entry may liquidate before USTR renders a decision on the exclusion request"). Thus, Harrison likewise could have had the opportunity to challenge Customs' classification decisions had the importer done so promptly. *See Juice Farms*, 68 F.3d at 1346 ("Customs posted bulletin notices of these liquidations at the customshouse. The bulletin notices supply sufficient notice and thus trigger the ninety-day period for protests. . . . Juice Farms, the importer, bears the burden to check for posted notices of liquidation and to protest timely. Juice Farms cannot circumvent the timely protest requirement by claiming that its own lack of diligence requires equitable relief under 28 U.S.C. § 1581(i)." (citations omitted)); *cf. Int'l Custom Prods.*, 467 F.3d at 1328 ("Plaintiff cannot take it upon itself to determine whether it would be futile to protest or not. In order to protect itself, a protest should have been filed . . . .").

## III

We have considered the parties' remaining arguments and find them unpersuasive. We affirm the Court of International Trade's decision dismissing ARP's and Harrison's amended complaints for lack of jurisdiction.

**AFFIRMED**